**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

CORA SKINNER, BROOKE TAYLOR,
GABBY JEANNE SAUCEDO, JAIME
EDMONDSON, JESSA HINTON, JESSICA
BURCIAGA, JESSICA KILLINGS,
KATARINA VAN DERHAM, PAOLA
CANAS, and URSULA MAYES,

Case No. _____

              Plaintiffs,

      - against -

REVIEW ENTERTAINMENT CORP., d/b/a
CITYSCAPES GENTLEMEN'S CLUB,
DENNIS CONWAY, and ASUMOH U.
ENYIEMA,

**COMPLAINT**

(Jury Trial Demanded)

              Defendants.

Plaintiffs CORA SKINNER, BROOKE TAYLOR, GABBY JEANNE SAUCEDO, JAIME EDMONDSON, JESSA HINTON, JESSICA BURCIAGA, JESSICA KILLINGS, KATARINA VAN DERHAM, PAOLA CANAS, and URSULA MAYES,  (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendants REVIEW ENTERTAINMENT CORP., d/b/a CITYSCAPES GENTLEMEN'S CLUB, DENNIS CONWAY, and ASUMOH U. ENYIEMA, respectfully allege as follows:

<u>BACKGROUND</u>

1. This is an action for damages and injunctive relief relating to Defendants' theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, in order to promote their strip club, CityScapes Gentlemen's Club ("CityScapes" or, the "Club").

2. As detailed below, Defendants theft and unauthorized use of Plaintiffs' images,

- 1 -

photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which protects a person's right to privacy and publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; d) defamation, and; e) various common law torts.

3.     In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any of the Clubs, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) insofar as there is complete diversity of the parties to this action, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).   This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.     As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.  No Plaintiff resides in New York.

6.     According to publicly available records, Defendants are a New York corporation and the principals thereof.

7.     Venue is proper in the United States District Court for the Eastern District of New York because Queens County is the principal place of business for Defendants.

8.     All parties have minimum contacts with Queens County, a significant portion of

the alleged causes of action arose and accrued in Queens County, New York, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Queens County.

## PARTIES

*Plaintiffs*

9.      Plaintiff Cora Skinner ("Skinner") is a well known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff Brooke Taylor ("Taylor") is a well known professional model, and a resident of Santa Barbarba County, California.

11.     Plaintiff Gabby Jeanne Saucedo ("Saucedo") is a well known professional model, and a resident of Riverside County, California.

12.     Plaintiff Jaime Edmondson ("Edmondson") is a well known professional model, and a resident of Pinellas County, Florida.

13.     Plaintiff Jessa Hinton ("Hinton") is a well known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Jessica Burciaga ("Burciaga") is a well known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Jessica Killings ("Killings") is a well known professional model, and a resident of Los Angeles, California.

16.     Plaintiff Katarina Van Derham ("Van Derham") is a well known professional model, and a resident of Los Angeles, California.

17.     Plaintiff Paola Canas ("Canas") is a well known professional model, and a resident of Los Angeles County, California.

18.     Plaintiff Ursula Mayes ("Mayes") is a well known professional model, and a resident of Orange County, California.

*Defendants*

19.     According to publicly available records, defendant Review Entertainment, Inc. ("Review Entertainment") is a corporation organized under the laws of the State of New York, and has a principle place of business at 55-61 58th Street, Maspeth, New York 11378.   Review Entertainment operates CityScapes, located at 55-61 58th Street, Maspeth, New York 11378.

20.     Upon information and belief, defendants Dennis Conway ("Conway") and Asumoh U. Enyiema ("Enyiema") are each residents of the State of New York.  Conway and Enyiema are each identified by the New York State Liquor Authority as a principal of Review Entertainment.   Upon information and belief, Conway and Enyiema, in their capacities as principals of Review Entertainment, maintain operational control over CityScapes, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

21.     As set forth immediately below, each Plaintiff is an extremely well known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

22.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

23.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed

CityScapes.

24.     In the case of each and every Plaintiff, such appearance was false.

25.     Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

***Plaintiffs' Backgrounds and Careers***

26.     Skinner is a model and actress who has appeared on *CSI: Miami*, *Rules of Engagement*, *Shark*, *Las Vegas*, and *The Tonight Show*. Skinner has also modeled for a variety of internationally known brands, including Sketchers, Nordstrom, Fredericks of Hollywood, Tecate, Skky Vodka, and Muscle & Fitness, and has appeared in music videos for the likes of Def Leppard.   In addition, Skinner has appeared in *Maxim*, in both the United States, and various European versions, the *Playboy* lingerie catalog (to name just a few of her campaigns), and has her own set of Bench Warmer trading cards.

27.     That we know of, Skinner is depicted in the photo in Exhibit "A" to promote CityScapes on its Facebook page.  This Image depicts Skinner in a sexually suggestive outfit and was intentionally altered to make it appear that Skinner was either a stripper working at CityScapes, or endorsed the Club.

28.     Skinner has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     Taylor is a world renowned model who has appeared in *Playboy*, *FHM*, *Maxim*, and *Stuff*. She has also appeared in commercials and billboards Fredrick's of Hollywood, Coors

Light, and Budweiser.   Taylor been also featured in countless other catalogs, magazines, billboards, and television commercials and shows including, most recently, *Viva Glam*.

30.     That we know of, Taylor is depicted in the photo in Exhibit "B" to promote CityScapes on its Facebook page.  This Image depicts Taylor in a sexually suggestive outfit and was intentionally altered to make it appear that Taylor was either a stripper working at CityScapes, or endorsed the Club.

31.     Taylor has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.      Saucedo started her career as a cover model for Super Street and Import Tuner magazines. She later became a feature model for UGO.com and IGN.com, and has been sponsored by the skateboarding company "sk8mafia," which used Saucedo's imagery on their skateboards.  Most recently, Saucedo has shot for and appeared on Playboy TV.

33.     That we know of, Saucedo is depicted in the photo in Exhibit "C" to promote CityScapes on its Facebook page.  This Image depicts Saucedo in a sexually suggestive outfit and was intentionally altered to make it appear that Saucedo was either a stripper working at CityScapes, or endorsed the Club.

34.     Saucedo has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Edmondson is a graduate of Florida Atlantic University, is a former police officer, and Miami Dolphins cheerleader, and was the January 2010 *Playboy* Playmate of the Month. Edmondson was a participant in the competitive reality TV series "The Amazing Race 14," has

served as a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio, and has appeared in "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets.  Edmondson has two children with her fiancée, Major League Baseball superstar, Evan Longoria.

36.     That we know of, Edmondson is depicted in the photos in Exhibit "D" to promote CityScapes on its Facebook page.  These Images each depict Edmondson in a sexually suggestive outfit, and were intentionally altered to make it appear that Edmondson was was either a stripper working at CityScapes, or endorsed the Club.

37.     Edmondson has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Burciaga is a model and businesswomen, and the owner of Sailor and Saint Clothing line. Burciaga was the *Playboy* Playmate of the Month for February 2009, and has also modeled for *Stuff*, *Maxim*, *EA Sports*, *Import Turner*, *Modified Magazine*, and *Show Latina*, among many others.  Burciaga has 1.3 million followers on Instagram and 200k followers on Twitter. [1]

39.     That we know of, Burciaga is depicted in the photo in Exhibit "E" to promote CityScapes on its Facebook page.  This Image depicts Burciaga in a sexually suggestive outfit and was intentionally altered to make it appear that Burciaga was either a stripper working at CityScapes, or endorsed the Club.

40.     Burciaga has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

has suffered, and will continue to suffer, damages as a result of same.

41.     Hinton is a world renowned and highly sought after model, who was the July 2011 *Playboy* Playmate of the Month.  Hinton has been active in the entertainment industry since the age of sixteen (16), and has appeared in countless national commercial and television shows. In 2010 Hinton became the face of the Palms Hotel & Casino's advertising campaign, has hosted the television show *Victory Poker,* has served as the interview personality for *Top Rank Boxing*, and has been the centerpiece of an advertising campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises.  Hinton has also served as a spokes model for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, Protein World, Rhonda Shear Shapewear, Leg Avenue and Roma Costume, and has been a featured cover model for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. Her images have likewise appeared on countless billboards, magazines, posters, and multiple forms of electronic media.  Ms. Hinton has been named Creative Director for MAJR Media, and she also served as a guest host for the television station KTLA in Los Angeles. In addition, Hinton has earned an elite status as a social media celebrity, with more than 1.1 million followers on Instagram, 872,000 followers on Facebook, and 181,000 followers on Twitter.

42.     That we know of, Hinton is depicted in the photo in Exhibit "F" to promote CityScapes on its Facebook page.  This Image depicts Hinton in a sexually suggestive outfit and was intentionally altered to make it appear that Hinton was either a stripper working at CityScapes, or endorsed the Club.

43.     Hinton has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Mayes is a well-known model whose career started with a spread in *Maxim* magazine, and who has appeared in countless publications since then, including *Vogue*, *Elle*, *In Style*, *Cosmopolitan*, *Marie Claire*, and many more. Mayes has appeared on television on *Deal or No Deal*, *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*, and has appeared in commercial campaigns for Coronet Diamonds, Volkswagen, Subaru, and Bacardi, to name a few. She was also the cover model and star of the game *Juiced 2: Hot Import Nights*, and likewise serves as a paid spokes model for a global events company.

45.     That we know of, Mayes is depicted in the photo in Exhibit "G" to promote CityScapes on its Facebook page.  This Image depicts Mayes in a sexually suggestive outfit and was intentionally altered to make it appear that Mayes was either a stripper working at CityScapes, or endorsed the Club.

46.     Mayes has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Canas is a Colombian-born model, actress, and television host, who over the past 12 years has appeared as a runway model at fashion shows throughout the world, and currently serves as the is the international face of Curve lingerie.  Canas was recently chosen as the face of the Masters Gold Tournament in Dubai, and was the image for the "International Surf and Sport expo" in Orlando. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like FOX Sports and on both Telemundo and TV Azteca as herself.

48.     That we know of, Canas is depicted in the photo in Exhibit "H" to promote CityScapes on its Facebook page.  This Image depicts Canas in a sexually suggestive outfit and

was intentionally altered to make it appear that Canas was either a stripper working at CityScapes, or endorsed the Club.

49.     Canas has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.     Killings is a world-renowned model who has appeared in countless magazines, including *SHOW*, *Blackmen*, *Straight Stuntin*, *Smooth*, *Mixed Magazine* and many more. Killings has likewise appeared in various music videos as lead talent for artists such as Far East Movement and Snoop Dogg, "OMG,", Slim Thug and Baby Bash, Big Sean and Chris Brown, and Jay Sean and Nicki Minaj.  She has over 1 million followers on Instagram, and 52,00 followers in Twitter.

51.     That we know of, Killings is depicted in the photos in Exhibit "I" to promote CityScapes on its Facebook page.  These Images depicts Killings in a variety of sexually suggestive outfits and were intentionally altered to make it appear that Killings was either a stripper working at CityScapes, or endorsed the Club.

52.     Killings has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.     Van Derham is a successful model, actress, philanthropist, and entrepreneur.  As a model, Van Derham has graced over 60 magazine covers and appeared in over 600 media outlets including CNN, FOX, and NBC.  She appeared in 17 national and international print and TV commercials, and has been voted one of the 100 sexiest women in the world by magazines on 3 different continents.   Van Derham made history by being the only St. Pauli Girl spokesmodel to

- 10 -

ever be re-elected.  As an actress, Van Derham has appeared on "Entourage", "Unbelievable, "15 Minutes," "Redline," "CSI" and "Monk," and in music videos for Bobby Brown, Ja Rule, Andy, Big and Rich, among others.  Katarina is a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine VIVA GLAM established in 2012.  Her well respected status gets her invited as a judge of model contests and beauty pageants around the world.

54.    That we know of, Van Derham is depicted in the photo in Exhibit "J" to promote CityScapes on its Facebook page.  This Image depicts Van Derham in a sexually suggestive outfit and was intentionally altered to make it appear that Van Derham was either a stripper working at CityScapes, or endorsed the Club.

55.    Van Derham has never been employed at CityScapes, has never been hired to endorse CityScapes, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

56.    Upon information and belief, Review Entertainment Enterprises operates CityScapes, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

57.    Upon information and belief, and in furtherance of its promotion of CityScapes, Review Entertainment owns, operates and controls the CityScapes website, located at www.cityscapesny.com (hereinafter, the "CityScapes Website").   In addition, and upon information and belief, Review Entertainment owns, operates, and controls the CityScapes Facebook, Twitter, and Instagram accounts.

58.    Review Entertainment uses the CityScapes Website, and the CityScapes Facebook, Twitter, and Instagram accounts, to promote CityScapes, and to attract patrons

thereto.

59.     Review Entertainment does this for its own commercial and financial benefit.

60.     Review Entertainment has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at CityScapes or endorsed CityScapes.

61.     Review Entertainment used Plaintiffs' Images, and created the false impression that they worked at or endorsed CityScapes in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

62.     As Review Entertainment was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by CityScapes, and at no point have any of the Plaintiffs ever endorsed CityScapes.

63.     All of Review Entertainment's activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Review Entertainment did not compensate Plaintiffs for its use of their Images.

64.     As such, Plaintiffs have never received any benefit for Review Entertainment's use of their Images.

***Standard Business Practices in the Modeling Industry***

65.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

66.     The fee that a professional model, such as each of the Plaintiffs, will receive is

negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Theft of Plaintiff's Images***

67.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs privacy by using Plaintiffs Images for commercial purposes in order to promote CityScapes, by and through various marketing and promotional mediums including, without limitation, the CityScapes Website, and the CityScapes Twitter, Facebook, and Instagram accounts.

68.     Defendants showcased Plaintiffs' Images on the CityScapes Website in order to create the false impression that Plaintiffs worked at CityScapes, or endorsed same.

69.     Defendants did so in order to attract clientele to CityScapes, promote CityScapes, and thereby generate revenue for Defendants.

70.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed CityScapes.

71.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers. This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is

that they are each strippers.

72.     At no point were any of the Plaintiffs ever affiliated with CityScapes, or Defendants.

73.     Each of Plaintiffs' Images was used without her consent.

74.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

75.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

76.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the CityScapes Website, or the CityScapes Twitter, Facebook, or Instagram accounts.

77.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

78.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

### FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq.*:**
**False Endorsement)**

79.      Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

80.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described herein.

81.     Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false

impression with the public that Plaintiffs either worked at CityScapes, or endorsed same.

82.     This was done to promote and attract clientele to CityScapes, and thereby generate revenue for the Defendants.

83.     Thus, this was done in furtherance of Defendants' commercial benefit.

84.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, CityScapes, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with CityScapes.

85.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at CityScapes.

86.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of CityScapes, and the goods and services provided by CityScapes.

87.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of N.Y. Civ. Rights Law §§ 50-51)

88.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on the CityScapes Website and/or related social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at CityScapes, or endorsed same.

90.     At all relevant times, the CityScapes Website and social media accounts were used and operated by Defendants for advertising and trade purposes.

91.     The CityScapes Website and social media accounts were designed to attract business to CityScapes and generate revenue for Defendants.

92.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for CityScapes.

93.     At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on the CityScapes Website or on any social media account.

94.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote CityScapes.

95.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

96.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

97.     Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

98.     In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

99.     In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act,

Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

### THIRD CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act)

100.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

101.    Defendants operated the CityScapes Website and social media accounts in order to promote CityScapes, to attract clientele thereto, and to thereby generate revenue for Defendants.  As such, Defendants' operation of the websites and social media accounts, and their publication of Images thereon, were consumer-oriented in nature.

102.    Defendants published Plaintiffs' Images on the CityScapes Website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at CityScapes, or endorsed same.

103.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with CityScapes.

104.    As Defendants were at all times aware, Plaintiffs never worked at any of the CityScapes, never endorsed CityScapes, and never had any affiliation with CityScapes.

105.    Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at CityScapes, or endorsed CityScapes.

106.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on the CityScapes Website and social media accounts, each of the Plaintiffs' reputations

- 17 -

was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

107.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have  been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Defamation)

108.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

109.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote CityScapes to the general public and potential clientele.

110.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed at CityScapes, endorsed CityScapes, or that they had some affiliation with CityScapes.

111.    None of these representations were true.

112.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at CityScapes, or endorsed same.

113.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by CityScapes, had no affiliation with CityScapes, had not consented to the use of their Images, and had not been compensated for the use of their Images.

114.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by CityScapes, had no affiliation

with CityScapes, had not consented to the use of their Images, and had not been compensated for the use of their Images.

115.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

116.    Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

117.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

118.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

119.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

120.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five

thousand ($75,000), exclusive of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

121.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

122.    Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models that were used on the CityScapes Website and social media accounts.

123.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

124.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and New York law, were not violated.

125.    In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted, and had not paid.

126.    Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

127.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Conversion)

128.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

129.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

130.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

131.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

132.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

133.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

134.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at CityScapes, or endorsed same.

135.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

136.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

137.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting

clientele to CityScapes.

138.   Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

139.   As such, Plaintiffs have been damaged in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

140.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

141.   Plaintiffs are each world famous models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

142.   Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

143.   Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, or endorse their Club, Defendants have not compensated Plaintiffs.

144.   Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

145.   Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through eighth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       December 15, 2015

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
    John V. Golaszewski, Esq.
    1745 Broadway, 17th Floor
    New York, New York
    T: 855.267.4457
    F: 855.220.9626

*Attorneys for Plaintiffs*
